UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| TERRY LANE WILCHER, SR., | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:25-CV-32-KKC-HAI |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY, *et al.*, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

Terry Wilcher, Sr., proceeding *pro se*, brings this civil-rights lawsuit against Lincoln County Sheriff's Deputy Tyler Whitworth. Defendant Whitworth has filed his Motion for Summary Judgment. D.E. 34. Plaintiff filed a response to Defendant's motion. D.E. 37. Defendant then replied. D.E. 39. For the reasons that follow, the undersigned recommends that summary judgment be granted and the suit be dismissed without prejudice.

## I. Background

Wilcher's claim stems from a tragic incident. Defendant Whitworth and Sergeant Eric Dean were dispatched to Plaintiff's residence in response to a fatal overdose. D.E. 34-2 at 2. While en route, Defendant was advised by dispatch that Plaintiff "may harm himself," and the dispatcher reported that "caller, Michelle, advised that her husband may try to kill himself because he can't live without his daughter." D.E. 38, LCSO 0038 at 00:33-00:41; *see also* D.E. 38, LCSO 0065 at 07:48-09:15.

Over police radio, the dispatcher reported to Defendant Whitworth that she was uncertain whether Plaintiff had a weapon in his possession due to conflicting information from Plaintiff's

wife. D.E. 38, LCSO 0038 at 00:41-00:47. Plaintiff's wife initially answered in the affirmative when asked by the 911 operator whether Plaintiff had any firearms. D.E. 38, LCSO 0065 at 8:15-8:17. However, Plaintiff's wife then stated, and later reiterated, that Plaintiff did not have any weapons on him. *Id.* at 8:19-9:05. Earlier, over police radio, an unidentified officer interjected, stating that Plaintiff was "normally armed with a 9mm." D.E. 38, LCSO 0038 at 00:26-00:30.

Defendant Whitworth and Sergeant Dean arrived at Plaintiff's home in response to the 911 call; Dean proceeded to the overdose victim because he was carrying Narcan. D.E. 34-3 at 24. Meanwhile, Defendant approached Plaintiff. D.E. 33 at 92:21. The ensuing exchange produced this litigation.

Plaintiff alleges that Defendant Whitworth did not identify himself when he approached. *Id.* at 93:2. Moreover, Plaintiff claims that "[Defendant] just started patting me down and pulling my pants to my ankles." *Id.* at 93:2-4. Deputy Whitworth does not deny that he failed to identify himself when he approached Wilcher. Deputy Whitworth disputes that he pulled Plaintiff's pants down (D.E. 34-1, at 4 n.2), but the Court must credit Plaintiff's version.

When Deputy Whitworth approached Plaintiff and attempted to frisk him, Plaintiff responded by asking "What the [hell] are you doing?" D.E. 33 at 94:8. Deputy Whitworth replied that he was responding to a call that involved a dead body and a man with a gun. *Id.* at 94:10-12. Plaintiff stated that he did not own a gun. *Id.* at 94:12. Deputy Whitworth instructed Wilcher to "sit down." *Id*. at 94:14. Wilcher, defying the instruction, said "Who the [fuck] do you think you are?" *Id*. at 94:14-15. The parties repeated their words to one another, and Wilcher, once again, failed to comply with Deputy Whitworth's demand to sit down. D.E. 33 at 94:14-18.

At this juncture, the essential facts that bear on this dispute allegedly occurred. Plaintiff's Complaint alleges that Defendant Whitworth used excessive force during an arrest. D.E. 1 at 5.

Plaintiff alleges that Defendant grabbed him, choked him until he became unconscious, and threw him against the ground. D.E. 33 at 94:18-20. He also stated that when he awoke, he heard Defendant commanding him to "quit resisting." *Id.* at 94:23.

Defendant's account differs from Plaintiff's. Defendant alleges that Plaintiff lunged at him, leading him to tackle Plaintiff. D.E. 34-1 at 3 n.1; *see also* D.E. 34-2 at 2. Plaintiff denies lunging at Defendant. D.E. 33 at 101:4. Once both parties were on the ground, Defendant claims that he was only able to restrain one of Plaintiff's hands because the other was underneath his body near his waistband. D.E. 34-2 at 2. Eventually, Defendant Whitworth was able to place Plaintiff in handcuffs. *Id.*

Plaintiff claims that Defendant pulled his pants down when he initiated the frisk and that he became exposed from the waist down. D.E. 33 at 96:5-9. Defendant disclaims any notion that he pulled Plaintiff's pants down during the altercation. D.E. 34-1 at 4 n.2. Nevertheless, Plaintiff alleges he was exposed in an indecent manner, and that Defendant Whitworth walked him back to Defendant's police cruiser as his loved ones watched. D.E. 33 at 103-104:24-25, 1-18.

The following facts are not in dispute. Plaintiff was arrested on state charges, including 2nd Degree Disorderly Conduct, Resisting Arrest, Menacing, 3rd Degree Assault, and 3rd Degree Terroristic Threatening. D.E. 34-2 at 2-3. On August 12, 2024, Plaintiff pleaded guilty to all these charges, except for 3rd Degree Assault, in Lincoln District Court. *Commonwealth v. Wilcher*, 24-F-41 (Lincoln District Ct. Aug. 12, 2024).

Plaintiff initiated this action on February 7, 2025, bringing claims against Lincoln County, Lincoln County Sheriff Shawn Hines, and Lincoln County Sheriff's Deputy Whitworth. D.E. 1 at 2. Plaintiff's claims against Defendant Lincoln County were dismissed during an initial screening of the complaint. D.E. 6 at 3. Furthermore, on March 18, 2025, Defendants Hines and Whitworth

filed their Partial Motion to Dismiss. D.E. 10. District Judge Caldwell granted the motion to dismiss, leaving only Plaintiff's Fourth Amendment excessive-force claim against Defendant Whitworth under 42 U.S.C. § 1983. D.E. 14 at 3. On June 4, 2026, the matter was referred to the undersigned. D.E. 16.

On April 10, 2026, Defendant Whitworth filed his Motion for Summary Judgment, which is now ripe. D.E. 34, 37, 39. On May 12, Plaintiff filed a response to Defendant's motion. D.E. 37. On May 26, Defendant replied. D.E. 39.[1]

Wilcher's Motion for Summary Judgment is ripe. The Court relies on the evidence of record, which includes the parties' conventional filings and Plaintiff's deposition. On January 20, 2026, Plaintiff's deposition was taken at the Lincoln County Judicial Center. D.E. 33 at 1. Defendant's conventional filing was received and entered on April 13, 2026. D.E. 36. Defendant's conventional filing includes two audio files entitled Exhibit D and Exhibit E. *Id.* Both Exhibit D and E are brief recordings of radio calls. Plaintiff's conventional filing was received and entered on May 12, 2026. D.E. 38. Plaintiff's conventional filing is more voluminous. Of note, Plaintiff's filing includes a video taken at the scene (entitled "Video"), the entirety of the 911 call (entitled "LCSO 0065"), and photos of the parties' injuries. *Id.* All the materials included in Defendant's conventional filing are also present in Plaintiff's conventional filing.

## II. Legal Standard for Summary Judgment

Summary Judgment under Federal Rule of Civil Procedure 56 "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has instructed the lower

[1] Without leave, Plaintiff filed a sur-reply to Defendant's reply. D.E. 40. However, in accordance with Joint Local Rule 7.1(g), the sur-reply will not be considered for the purposes of this Recommend Disposition. Nevertheless, Plaintiff's sur-reply does not advance a novel argument, nor does the sur-reply affect the outcome of this dispute.

courts that materiality is determined by the substantive law of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is a fact that "might affect the outcome" of the case. *Id.* Furthermore, a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court "must view all evidence and draw all inferences in the light most favorable to the nonmoving party." *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). However, the nonmoving party cannot rely solely upon allegations in the pleadings when they assert there is a genuine dispute of fact; they must point to evidence of record which demonstrates that a factual question remains for trial. Fed. R. Civ. P. 56(c); *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003).

Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

## III. Analysis

Defendant raises two arguments in his Memorandum in Support for Summary Judgment. D.E. 34-1 at 6, 9. The first is that Plaintiff's claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 6. Next, Defendant argues that Plaintiff has failed to establish that Defendant Whitworth violated his "clearly established" constitutional rights under the Fourth Amendment, meaning he is entitled to qualified immunity. D.E. 34-1 at 9.

The Court must first consider whether Plaintiff's claim is barred by the *Heck* doctrine. In *Heck*, the Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

> tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87. Thus, a claim that mirrors the relationship described above will not be cognizable unless the conviction has been invalidated. *Id.* at 487. The Supreme Court has "emphasized that a claim barred by the *Heck* doctrine 'has not yet arisen' and is thus not cognizable under § 1983." *David v. Franklin County, KY*, No. 3:23-CV-28-KKC, 2026 WL 2452848, at *4 (E.D. Ky. Aug. 21, 2026) (quoting *Heck*, 512 U.S. at 489). Therefore, the *Heck* doctrine "functions as a substantive bar to accrual—not merely a defense—and mandates dismissal without prejudice." *Murray v. Jones*, No. 6:20-CV-82-MAS, 2025 WL 1507011, at *3 (E.D. Ky. May 27, 2025) (citing *Calihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999)).

In determining whether *Heck* bars a § 1983 claim, courts "must consider whether judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. If the plaintiff cannot show the conviction has been invalidated, the court must dismiss the complaint. *Id.* The Sixth Circuit has recognized two instances in which a § 1983 excessive force claim conflicts with a conviction: (1) the criminal offense includes the absence of excessive force as an element, or (2) excessive force would have served as an affirmative defense in the criminal case, but was not raised. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).

In the instant case, Plaintiff pleaded guilty to violating KRS § 520.090—Kentucky's resisting arrest statute—in Lincoln District Court. *Commonwealth v. Wilcher*, 24-F-00041 (Lincoln District Ct. Aug. 12, 2024). The resisting arrest statute states:

> (1) A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer, recognized to be acting under color of his official authority, from effecting an arrest of the actor or another by:
>
> (a) Using or threatening to use physical force or violence against the peace officer or another; or

(b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

KRS § 520.090(1). This Court has consistently held that the first *Schreiber* prong does not apply to Kentucky's resisting arrest statute because the statute "does not include the absence of excessive force as an element, and it explicitly forecloses any defense based on the alleged unlawfulness of the arrest itself, so long as the officer was acting in apparent good faith." *Everage v. Gayheart*, 800 F. Supp. 3d 759, 767 (E.D. Ky. 2025) (quoting *Murray*, 2025 WL 1507011, at *4); *see also David*, 2026 WL 2452848, at *4.

The second *Schreiber* prong applies if the plaintiff could have raised an affirmative defense of excessive force in response to their resisting arrest charge. *Schreiber*, 596 F.3d at 334 (citing *Cummings*, 418 F.3d at 684). "Under Kentucky law, an individual may claim self-defense to a charge of resisting arrest if the officer used 'unlawful physical force,' meaning more force than was reasonably necessary to effect the arrest." *Everage*, 800 F. Supp. 3d at 767-68 (citing *Murray*, 2025 WL 1507011, at *4); *see also David*, 2026 WL 2452848, at *5; *Burke v. Forbis*, No. 3:18-CV-802-DJH, 2021 WL 2418574, at *3 (W.D. Ky. June 14, 2021); *Spurlin v. Kromer*, No. 4:21-CV-106-BJB, 2024 WL 4151173, at *2 (W.D. Ky. Sept. 11, 2024). Thus, Plaintiff could have raised an excessive force defense to his resisting arrest charge. Yet, the record clearly indicates that Plaintiff did not raise the defense and instead entered a guilty plea. *Commonwealth v. Wilcher*, 24-F-00041 (Lincoln County District Ct. Aug. 12, 2024).

The Sixth Circuit, as well as multiple decisions in this District, have routinely held that plaintiffs who could have raised excessive force as an affirmative defense to a resisting arrest charge, but failed to do so, are barred from bringing a subsequent § 1983 claim that necessarily implies the invalidity of the conviction. *Cummings*, 418 F.3d at 684; *Everage*, 800 F. Supp. 3d at

768; *David*, 2026 WL 2452848, at *5; *Murray*, 2025 WL1507011, at *4; *Hart v. Lawson*, No. 6-20-CV-147-REW, 2024 WL 251147, at *10 (E.D. Ky. Jan. 23, 2024). Therefore, Plaintiff's § 1983 claim is barred by *Heck*.

In response, Plaintiff argues that he pleaded guilty to the resisting arrest charge because he was misled by his attorney. D.E. 37 at 1. He alleges that his attorney "told him after 6 months no one would ever know this had happened," and that his attorney did not mention that he could enter a plea of no contest. *Id.* Moreover, Plaintiff attempts to dispute the assertion that he was, in fact, resisting arrest. *Id.* at 3-4. However, Plaintiff does not dispute that he pleaded guilty to resisting arrest, nor does Plaintiff demonstrate that his conviction has been invalidated. In addition, as noted by Judge Caldwell, "courts in this Circuit apply the *Heck* doctrine when the conviction was obtained by *Alford* plea or no contest plea." *David*, 2026 WL 2452848, at *7 (internal citations omitted). Thus, Plaintiff's argument does not overcome *Heck*'s limitation on his § 1983 excessive force claim.

Next, Plaintiff argues that *Heck v. Humphrey* is distinguishable from this case, noting that *Heck* "is nothing like the case we are facing." D.E. 37 at 2. In support of this proposition, Plaintiff asserts that his case differs from *Heck* because no one "pulled his pants down" or "walked him 100 yards or more naked." *Id.* While Plaintiff correctly argues that the factual underpinning of *Heck* varies from the present case, this argument cannot overcome *Heck*'s bar as interpreted by the Sixth Circuit. In *Heck*, the petitioner alleged that law enforcement officials had engaged in unlawful acts that led to his arrest and conviction. *Heck*, 512 U.S. at 479. Plaintiff, on the other hand, alleges that Defendant used excessive force in effectuating an arrest. D.E. 1 at 5. While this case and *Heck* are based on different factual allegations, the bottom line is that when, as here,

"excessive force is an affirmative defense to the crime," a suit under § 1983 is barred. *Schreiber*, 596 F.3d at 334.

Under the *Heck* doctrine, *post-arrest* excessive force is not entitled to the same status as excessive force that occurred *before or during* the arrest. *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 992 (N.D. Ohio 2008). Thus, it is necessary for courts to scrutinize the sequence of events to determine if the alleged excessive force occurred after the suspect ceased resisting arrest. *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 612 (6th Cir. 2014). Notably, Plaintiff does not address the level of scrutiny required.

Plaintiff states that he was paraded around naked *after* he was placed in handcuffs. D.E. 37 at 2. While Defendant denies pulling Plaintiff's pants down, Plaintiff describes this happening throughout his deposition testimony. D.E. 33 at 93:2-4; 95:17-19; 96:5-9; 97:15-17; 100:1-13. The record also contains a video where Plaintiff's son can be heard saying, "they're putting my dad in handcuffs in the back of a cruiser with his pants down in front of everybody." D.E. 38 (video file entitled "Video").

Regardless, even if Plaintiff's allegations are taken as true, excessive force is defined as "unreasonable or unnecessary force under the circumstances." Excessive Force, Black's Law Dictionary (12th ed. 2024). In this case, assuming Plaintiff's narrative from his deposition, there is no indication that Deputy Whitworth exerted any force, let alone excessive force, following Wilcher's arrest. Plaintiff essentially claims he was embarrassed after the arrest. But, to raise a claim of excessive force, there must be some level of force involved. *Camarca v. City of Covington*, No. 2:22-CV-128-KKC, 2025 WL 1143255, at *6 (E.D. Ky. Apr. 16, 2025) (explaining "It is axiomatic to an excessive force claim that some level of force was actually applied and that some physical injury resulted."). Plaintiff does not specify any such post-arrest use of force.

Ultimately, Wilcher has not overcome *Heck*'s bar for several reasons. Wilcher has not shown that his resisting arrest charge has been called into question, nor has Wilcher shown that his case is materially distinct from *Heck*. There is no indication that Deputy Whitworth employed excessive force once Wilcher was in custody. Judgment in Wilcher's favor would imply his conviction was invalid, and Deputy Whitworth is entitled to judgment as a matter of law. Since Wilcher's claim is "not yet legally cognizable," the undersigned need not discuss whether Defendant Whitworth is entitled to qualified immunity against Plaintiff's excessive force claim. *Everage*, 800 F. Supp. 3d at 769 n.4.

## IV. Conclusion

For the reasons described above, the undersigned **RECOMMENDS** that Defendant Whitworth's Motion for Summary Judgment (D.E. 34) be **GRANTED** and the claim be **DISMISSED** without prejudice. Plaintiff's excessive force claim is barred under the doctrine set forth in *Heck*.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 21st day of September, 2026.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***Hanly A. Ingram***

**United States Magistrate Judge**